UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

RICHARD CHAD WILLIAMS,   Case No.: 11-05226

　　　Debtor.

**ORDER DENYING THE TRUSTEE'S REQUESTED RELIEF ON MOTION TO DETERMINE THE ESTATE'S INTEREST IN CERTAIN PROPERY**

　　D. Parker Sweet, Chapter 7 Trustee, Mobile, Alabama
　　C. Michael Smith and Suzanne Paul, Attorneys for the Debtor, Mobile, Alabama

　　This case is before the Court on the Trustee's motion to determine the estate's interest in certain property. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. The Court has the authority to enter a final order pursuant to 28 U.S.C. § 157(b)(2). For the reasons detailed below, the relief requested by the Trustee in his motion is due to be DENIED.

FACTS

　　The Debtor filed for Chapter 7 bankruptcy relief on December 29, 2011. The Debtor's bankruptcy filing was, in part, the product of the failure of his family construction business. The Debtor testified that he personally guaranteed several loans for the now-defunct business. In response to Question 14 of his Statement of Financial Affairs the Debtor represented that he "held (or controlled) for another person" the following assets: (1) several pieces of personal property owned by his wife, Julia Marco Williams ("Julia"), and their three young children, (2) funds in two brokerage accounts at Stifel Nicolaus owned by Julia, and (3) a homeplace owned by Julia located at 717 Wynncliff Drive, Mobile, Alabama (the "Wynncliff Drive home"). The personal property consisted primarily of household furnishings located at the Wynncliff Drive

1

home. The evidence shows that the household furnishings were given to Julia and her children by her parents as gifts years before the Debtor's bankruptcy. Both the Debtor and Julia testified that they were not purchased for the Debtor's benefit.

Several years prior to the Debtor's bankruptcy filing, in June 2005, Julia's father and mother passed away, with her father predeceasing her mother by three months. Julia was named the personal representative of her father and mother's probate estates. She testified that the probate process was costly, tedious, and frustrating. It was clear to the Court that the passing of Julia's parents was very hard on her.

Julia received an inheritance from her parents. Specifically, in January of 2006, she received two Stifel Nicolaus brokerage accounts totaling roughly $65,000 and was deeded her parent's home located at 9425 Private Road #166 a/k/a 2800-A Greer Road, Theodore, Alabama (the "Private Road home"). Before that time, the Debtor and Julia owned a home together at Darby Creek in Mobile, Alabama. However, after her father's death in 2005, Julia, the Debtor, and their children (collectively, the "Williams") moved into the Private Road home in order to care for her ailing mother. Julia and the Debtor sold the Darby Creek residence in November 2005. The Darby Creek property was subject to a mortgage and they realized no profit from the sale beyond their initial down payment. The Williams lived at the Private Road home until 2009.

On February 19, 2009, Julia sold the Private Road home for $522,946.60. The closing check was made payable to Julia alone. Julia used the funds obtained from the sale to purchase the Wynncliff Drive home for $560,000. She used her inheritance to pay the difference between the sale price of the Private Road home and the Wynncliff Drive home. The Williams currently call the Wynncliff Drive home their residence. The Debtor did not contribute any funds to the purchase of either home. The Wynncliff Drive home is free and clear of liens. The deed to the

2

Wyncliff Drive home named Julia and the Debtor as joint tenants with rights of survivorship. Julia and the Debtor testified that the Debtor was added to the deed for survivorship purposes only. Julia specifically testified that she did not intend to give an interest in the home to the Debtor; rather, she wanted the home to pass to her husband for the benefit of their children only in the event of her unexpected death. Julia's financial advisor suggested the joint tenancy relationship. Julia and the Debtor both testified that they were not familiar with other legal methods of effectuating Julia's intent to create survivorship rights. The Wynncliff Drive home is currently valued at $500,900 according to the Mobile County Revenue Commissioner.

The Stifel Nicolaus accounts were originally titled at UBS Financial Services in the name of Julia's mother, but were transferred to her mother's probate estate and were subsequently retitled in the name of the Debtor and Julia as joint tenants with rights of survivorship. Julia testified that, like with the Wynncliff Drive home, she included the Debtor on the Stifel Nicolaus accounts for survivorship purposes only, not as a gift. She hoped that in the event of her untimely death that her assets would pass to her husband, for the benefit of their children, without going through probate. The Debtor and Julia testified that the money in the Stifel Nicolaus accounts is not used for the day-to-day expenses of the family. Instead, Julia testified that the money would be saved for the future benefit of the Williams' children.

The Trustee filed this action asserting that the Debtor's undivided one-half interest in the Stifel Nicolaus accounts and the Wynncliff Drive home are property of the estate and subject to collection for the benefit of creditors. The Trustee also submitted that the Debtor possessed an ownership interest in the home furnishings detailed in Question 14 of the Debtor's Statement of Financial Affairs. However, after considering the testimony of the Debtor and his wife, the Trustee abandoned his argument regarding the home furnishings. In opposition, the Debtor

argues that the assets listed in Question 14 are not property of the estate because the Debtor merely possesses bare legal title to those assets pursuant to a resulting trust for the benefit of Julia. Further, as to the Stifel Nicolaus accounts, the Debtor argues that the Alabama Uniform Mulitple-Person Accounts Act dictates the same result.

LAW

The issue in this case is whether the Debtor possesses an interest in specific property owned by his wife that the Trustee may collect on behalf of the bankruptcy estate. Bankruptcy courts look to state law to determine debtors' interest in property. *Butner v. United States*, 440 U.S. 48, 54 (1979). Without the benefit of the facts and circumstances of this case, it appears on its face that the Debtor possesses an undivided one-half interest with rights of survivorship in the Stifel Nicolaus accounts and the Wynncliff Drive home.[1] However, Alabama law recognizes the existence of the resulting trust. *McClellan v. Pennington*, 895 So. 2d 892 (Ala. 2004). The Alabama Court of Civil Appeals recently detailed the well-settled principle of the resulting trust in *Smith v. Smith*, 6 So. 3d 534, 540 (Ala. Civ. App. 2008):

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property.
>
> ...
>
> The principle has its foundation in the natural presumption that one who supplies the purchase money intends the purchase to be for his own benefit and not for another, and when the conveyance is taken in the name of another the presumption usually arises that the grantee is holding the land in trust for the purchaser.
>
> This resulting trust depends for its existence on the actual intent of the creator, expressed in acts other than writing or the spoken

---

[1] As the Trustee orally represented to the Court that the evidence did not support that the Debtor owned the home furnishings detailed in Question 14 of his Statement of Financial Affairs, the Court will only address the Debtor's interest in the Stifel Nicolaus accounts and the Wynncliff Drive home.

> word. The conduct of the payor with reference to the price and deed lead the court to infer an intent to have a trust for himself. The theory of enforcement is that of carrying out the intent of the settlor, just as truly as if he had reduced his trust to writing and inserted it in the deed. Resulting trusts are "intent enforcing" just as much as are the usual express trusts.

*Id*. at 540-41 (internal quotations and citations omitted). In Alabama, a resulting trust can regard personal or real property, *Lamar v. Lamar*, 263 Ala. 391, 393-94, 82 So. 2d 558 (Ala. 1955), and a resulting trust, as an implied trust, is not defeated by the Statute of Frauds, Ala. Code § 35-4-255 (1975). The trust arises at the time the consideration is provided, when the title passes to the grantee. *McClellan*, 895 So. 2d at 896.

At its core, a resulting trust is an equitable presumption that a person who provides consideration for property does not intend a gift when he or she titles that property in someone else's name. *Abston v. Abston*, 973 So. 2d 1068, 1071 (Ala. Civ. App. 2007). In many jurisdictions, including Alabama, the presumption is rebutted when the property is titled in the name of the spouse of the payor. *See* Restatement (Third) of Trusts § 9 (2003); *Mayo v. Gortney*, 468 So.2d 147 (Ala. 1985). In those cases, the "stronger, counter presumption of an intention to make a gift" controls. *Mayo*, 468 So. 2d at 149. However, that presumption may be defeated by evidence that the transfer was not intended as a gift. *Perryman v. Pugh*, 269 Ala. 487, 493, 114 So. 2d 253 (Ala. 1959); *Smith*, 6 So. 3d at 544. There also exists some semblance of a relaxation of the counter-presumption under Alabama law where a wife is the payor and the husband is the grantee. *See Mayo*, 468 So. 2d at 149 n.1.

In this case, the facts and circumstances indicate that the Debtor possesses a resulting trust in the Wynncliff Drive residence and the Stifel Nicolaus accounts.[2] Although the Debtor

---

[2] The Debtor also argues that the Stifel Nicolaus accounts belong to Julia pursuant to Ala. Code § 5-24-11. The Court does not reach consideration of that section's applicability because it finds that Julia is the beneficial owner of the funds in those accounts by virtue of a resulting trust.

and Julia are married, thus invoking the counter-presumption that the transfer of title was a gift, the evidence strongly indicates that Julia intended to create resulting trusts. Julia provided 100% of the purchase price of the Wynncliff Drive home. She derived those funds from a combination of the proceeds from the sale of her parent's home, the Private Road home, and other funds she received through her inheritance. The Debtor contributed nothing to the purchase of the Private Road home or the Wynncliff Drive home. Similarly, the Debtor contributed nothing to the Stifel Nicolaus accounts; they were purely the product of Julia's inheritance from her parents. It is instructive that no commingling of the funds from the Stifel Nicolaus accounts occurred. The money went directly from Julia's parents to their probate estates and then into her possession. No evidence was presented that any of the Debtor's money entered those accounts or that any money was withdrawn by the Debtor.

Further, both the Debtor and Julia testified that the Debtor was included on the title to the home and the brokerage accounts solely for survivorship purposes. The Court found Julia and the Debtor to be very credible and sincere people. Julia, after enduring a very trying probate process as the personal representative of her parents' probate estates, sought to provide for the future of her children without the frustrations and expense of probate if she happened to die unexpectedly. The Debtor understood the relationship and testified that his inclusion on the accounts and the deed to the home were not intended as gifts. It is clear to the Court that the Debtor received title to the assets for Julia's benefit, and ultimately the benefit of their children.

The Trustee raised the concern that other estate planning devices could have been utilized to maintain the assets for the benefit of the Williams' children. However, Julia and the Debtor are not attorneys. As such, they were unaware of the most effective estate planning legal device to effectuate their intent. Julia simply had the intent to preserve assets for the benefit of her

6

children and chose the estate planning method that was presented to her: joint tenancy with rights of survivorship. It is perfectly natural for Julia to want to provide for her children with her inheritance without the headache of the probate process and she understood the survivorship relationship to achieve that goal.

In sum, the evidence shows that Julia's intention in adding the Debtor's name to her Stifel Nicolaus accounts the Wynncliff Drive home title was to create a survivorship interest in him. She did not intend to give him a gift of any portion of these assets. Under Alabama, those facts create a resulting trust for Julia's benefit, leaving the Debtor with only bare legal title to the assets. The bankruptcy estate has no right to collect upon those assets.

THEREFORE IT IS ORDERED

1. The relief requested in the Trustee's motion to determine is DENIED;
2. The Debtor does not possess an interest in the Wynncliff Drive home and Stifel Nicolaus accounts that belongs to the bankruptcy estate.

Dated:   April 25, 2012

*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE